**Joe TAYLOR, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01-87-00763-CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 28, 1988.

Stanley Schneider, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Cathy Herasimchuk, Asst. Dist. Atty., Harris County, for appellee.

Before EVANS, C.J., and DUNN and SAM BASS, JJ.

## OPINION

SAM BASS, Justice.

A jury found appellant guilty of aggravated sexual assault of a child. Upon finding both enhancement paragraphs true, the jury assessed punishment at life imprisonment.

We affirm.

In his first point of error, appellant contends that the trial court erred by charging the jury on the law of parole under Tex. Code Crim.P.Ann. art. 37.07, sec. 4 (Vernon Supp.1988). Appellant relies on *Rose v. State*, ("*Rose I*"), 752 S.W.2d 529 (Tex. Crim.App.1987), which held that article 37.-07, section 4, is unconstitutional.

After the parties' submission of their briefs, however, the Court of Criminal Appeals published a clarification of *Rose I* in its opinion on rehearing, *Rose v. State* ("*Rose II*"), 752 S.W.2d 529 (Tex.Crim. App.,1988) (op. on reh'g). This decision supercedes arguments raised by both parties.

First, *Rose II* instructs that an appellant is not required to have made *any* objection at trial in order to complain on appeal. *Rose II*, at 530. Therefore, we need not address the State's contention that appellant failed to preserve error.

Second, although *Rose I*, at 537, indicated that an appellate court would use the harm analysis stated in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g), to determine whether a case required reversal, *Rose II* informs us that Tex.R.App.P. 81(b)(2) is, in fact, the correct standard of review. *Rose II*, at 530.

Rule 81(b)(2) provides:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines *beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.*

(Emphasis added.) Because of its "beyond a reasonable doubt" language, we interpret rule 81(b)(2) as placing the burden of proof upon the State to demonstrate that appellant suffered no harm in trial court proceedings.

The State must demonstrate "beyond a reasonable doubt" that an unconstitutional parole instruction made "no contribution" to the jury's determination of punishment if the decision is to be affirmed. Thus, the critical question is, "what does 'no contribution' mean?" Given that all the evidence, court instructions, and argument at trial contribute to a jury's verdict, the "no contribution" language cannot mean absolutely no contribution whatsoever.

In considering the meaning of the language of rule 81(b)(2), we observe that *Rose II* held that the State successfully demonstrated that the defendant, Rose, had suffered no harm by the parole instruction. This decision appears to have been founded on two major points: (1) the trial

court in *Rose*, after reading the statutory parole instruction, gave an additional, curative instruction, *viz.*, that the jury was not to consider how much time the defendant would actually serve; and (2) the facts of the crime were "heinous." *Rose II* leads us to the conclusion that the contribution forbidden by rule 81(b)(2) is defined as *a contribution about which an appellate court would have a reasonable doubt concerning its effect upon a conviction or punishment.* In other words, unless the State is able to persuade an appellate court "beyond reasonable doubt" that the parole instruction error did not affect (*i.e.*, made no contribution to) the jury's decision regarding punishment, we are required to reverse.

■ In the instant case, the trial court gave a cautionary instruction virtually identical to that given by the trial court in *Rose*. Neither appellant nor the State referred to the parole law during closing arguments. There is nothing in the record to indicate that the jury disregarded this instruction.

Furthermore, the facts of this case are as heinous as those of *Rose*. *Rose* involved an armed robbery in which several persons were threatened with a gun and one was actually shot. In the instant case, the record reflects that appellant abducted the complainant, a 16–year–old girl, at knifepoint, beat her repeatedly and brutally, abused her physically and verbally, raped her, and threatened to kill her with an axe. The State introduced appellant's prior felony record, which included final convictions for burglary with intent to commit theft (for which he received a five-year sentence), assault to murder [sic] a police officer (for which he received a three-year sentence), and robbery (for which he received a two-year sentence).

Judging this case on its facts alone, as well as in comparison to the circumstances presented in *Rose II*, we hold that the statutory parole instruction did not contribute to appellant's sentence and that this error was harmless beyond a reasonable doubt.

We overrule appellant's first point of error.

■ In his second point of error, appellant contends that the trial court erred in denying his request for production of the juvenile arrest records of the complainant. Any request for discovery of prior convictions of State's witnesses must show good cause, materiality, and possession of these records by the State. *Rodriguez v. State*, 513 S.W.2d 22, 27 (Tex.Crim.App.1974). The denial of this type of request is never error if the defendant has not shown that the State possessed the records (showing that its witnesses had prior criminal records) or had ready access to the records. *Id.* (and cases cited therein); *Martinez v. State*, 727 S.W.2d 133, 135 (Tex.App.—Fort Worth 1987, no pet.). Appellant argues that because the Texas Family Code limits access to juvenile court files, Tex.Fam.Code Ann. sec. 51.14(a) (Vernon 1986), he is incapable of showing harm on appeal.

■ The record does not reflect that appellant made *any* attempt to obtain records from the juvenile court system (such as attempting to fit himself within section 51.-14(a)(4)'s exception to the limitation on access to juvenile court records), nor does the record reflect an attempt by appellant to determine if any records existed, nor does the record reflect an attempt to ascertain if the State had possession of any such records. Appellant did not even ask the complainant on cross-examination whether she had a criminal record. Although under different circumstances appellant might have a valid argument (*e.g.*, if he attempted to ascertain the existence of such documents but was prevented by a state official and/or legislative directive), given his failure to make any effort to demonstrate whether the State possessed or had ready access to such documents, or even whether such documents exist, he fails to show any error on appeal. *Rodriguez v. State*, 513 S.W.2d at 27.

We overrule appellant's second point of error.

In his third point of error, appellant contends that the evidence was insufficient to prove that one of the enhancement allegations was final before the commission of

this cause. The questioned enhancement alleged that appellant had a prior conviction for possession of a firearm by a felon. The State's evidence offered in support of this allegation, however, reflected that the conviction was on appeal. The State did not provide any evidence of a final determination of this appeal.

■■■ Only final convictions can be used for enhancement. *Carter v. State,* 510 S.W.2d 323, 324 (Tex.Crim.App.1974). A conviction from which an appeal is taken is not final until that conviction is affirmed by the appellate court. *Id.* The burden is on the State to make a *prima facie* showing that any prior conviction alleged for enhancement purposes is final before the commission of the primary offense, and not until after this showing is made does the burden shift to the defendant to prove otherwise. *Jones v. State,* 711 S.W.2d 634, 636 (Tex.Crim.App.1986); *Diremiggio v. State,* 637 S.W.2d 926, 928 (Tex.Crim.App. 1982).

■■■ Because the State failed to carry its burden of showing that all prior convictions used for enhancement purposes were final at the time appellant committed the offense in the instant case, appellant's contention, that the evidence was insufficient to prove that the enhancement was final, is correct. This, however, does not end our analysis.

■■■ Appellant's point of error is phrased in terms of sufficiency of the evidence. Texas law prevents the State on retrial from attempting to allege again an enhancement when it has failed to prove that enhancement with sufficient evidence at the first trial. *Ex parte Sewell,* 742 S.W.2d 393, 395 (Tex.Crim.App.1987) (and cases cited therein). This is because "double jeopardy" attaches. *Id.* at 397. However, the mere fact that the prior conviction was not proved final by sufficient evidence does not require an automatic reversal. Rather, we hold that a harm analysis is appropriate.

Although we have been directed to no case holding that an appellant must "show harm" to obtain a reversal based on error

resulting from an enhancement not proven by sufficient evidence, the Court of Criminal Appeals has required a showing of harm by an appellant when he complains that a conviction used for enhancement purposes is *void. Ex parte Flores,* 537 S.W.2d 458, 460 (Tex.Crim.App.1976). This is due to the fact that in alleging prior convictions, the State:

> [is] not seeking again to convict the defendant, but [is] merely seeking to enhance his punishment for the offense which he [is] then on trial in the event of conviction. The provisions of [Tex.Penal Code, article 12.42(d) (Vernon Supp. 1988)] do not create an offense, inflict additional punishment for a prior offense, or authorize a conviction on a habitual criminal charge; they merely prescribe more severe punishment based on persistence in crime.

*Mullins v. State,* 409 S.W.2d 869, 872 (Tex. Crim.App.1966) (op. on reh'g). We find the analogy between enhancements proven to be void and enhancements supported by insufficient evidence to be especially persuasive in light of the Court of Criminal Appeals' statement that, "if a *void* conviction is used, the State has insufficiently proven a factual element, i.e., that the defendant has a prior conviction." *Ex parte Quirke,* 710 S.W.2d 582, 584 (Tex.Crim. App.1986) (emphasis in original).

In further support of our holding is the fact that a variance between the allegations pleaded in an enhancement paragraph and the proof introduced at trial is material and fatal *only* if it would mislead a defendant to his prejudice. *Freda v. State,* 704 S.W.2d 41, 42 (Tex.Crim.App.1986). This rule, being a variant form of harm analysis, reflects tolerance for errors concerning proof of enhancements at trial.

As noted by this Court in *Mason v. State,* 740 S.W.2d 517, 519 (Tex.App.— Houston [1st Dist.] 1987, no pet.), Texas criminal law has shifted from the concept of granting reversals on appeals when the error established made no contribution to an appellant's conviction or punishment.

We hold that a harm analysis is required.[1] We also hold, however, that the *Almanza* analysis, and its concomitant "harm" terminology, is not appropriate.

Instead, rule 81(b)(2) clearly applies. Because this rule refers to "error in the proceedings below," without any limitation on the type of error, we are required by law to use its method of analysis in resolving appellant's point. We apply the rule as we did above in addressing the "thorny *Rose*" problem.

We hold that the State has established, beyond a reasonable doubt, that the improperly proven enhancement made no contribution to the appellant's conviction. In addition to the faulty enhancement detailed in the indictment, appellant had three final prior convictions, all of which were before the jury in the form of penitentiary packets, namely: burglary; assault to murder [sic] a peace officer; and robbery. As stated above, the primary effect of the second enhancement paragraph being found true by the jury was to raise the minimum punishment for this offense from 15 to 25 years. Again, by its verdict the jury demonstrated that it was not inclined toward assessing a sentence within the 15– to 25– year range.

As in the case of a void enhancement's inclusion in an indictment, we hold that the inclusion of this allegation of a prior conviction, although not proven to be final, did not harm appellant.

In holding that the State has demonstrated that this error made no contribution to appellant's sentence, we are fully cognizant that in closing argument, the State referred to the faulty enhancement allegation, stating that, "you will see that his last jury trial [sic] he received life, and I'm asking you, can you do less?" We hold that this is not dispositive because if the State had never placed before the jury the faulty enhancement paragraph (*e.g.*, if the State had chosen to abandon the paragraph), so that it had been a required finding, then, based on the extremely heinous facts of this cause, the violent nature of the appellant's three other convictions, and the violent nature of the appellant himself as reflected by both of these prior convictions, and the facts of the instant cause, it appears to us beyond a reasonable doubt that the jury would have assessed the same sentence.

We overrule appellant's third point of error.

■ In his fourth point of error, appellant argues that the trial court erred in admitting the victim's emergency room medical records from Twelve Oaks Hospital because the State failed to show that the records were made at or near the time that the recorded events occurred.

Adams, the custodian of records at Twelve Oaks Hospital, testified that it was the hospital's business practice to enter the type of records at issue at or near the time of the doctor's examination of the patient, and that the person who entered the information into the records had personal knowledge of the "transaction" between the patient and the doctor. Although the custodian of records must be able to testify to the fact that the records at issue are, as a matter of business practice, made "at or near the time" of the events recorded, she need not have personal knowledge about the specific records in question. *McGowan v. State*, 664 S.W.2d 355, 359 (Tex.Crim. App.1984). This rule extends to both personal knowledge of the event itself and personal knowledge of the exact moment at which the event was recorded. *See Mitchell v. State*, 750 S.W.2d 378, 379–80 (Tex. App.—Fort Worth 1988, n.p.h.). Appellant's remaining complaint about these records was waived when he failed to object on that basis at trial. *Cisneros v. State*, 692 S.W.2d 78, 82 (Tex.Crim.App. 1985).

---

**1.** *See Fain v. State*, 725 S.W.2d 200, 202–03 (Tex. Crim.App.1986), in which the court applied the *Almanza* harm analysis in resolving an appellant's claim of error. The appellant argued that the State had provided insufficient evidence to support the jury's finding of two enhancement allegations to be true because the evidence adduced at trial conflicted with the instructions in the charge. *See also* the reference to the majority's opinion as invoking the "wink wink theory of law." *Id.* at 206 (Teague, J., dissenting).

We overrule appellant's fourth point of error.

In his fifth point of error, appellant contends that the State failed to comply with a discovery order to provide the defendant with a list of all tangible objects in its possession, contending that the State failed to inform him of its possession of the knife and axe used in attacking the complainant.

Appellant's only objection at trial to the admission of this evidence was based upon his assertion that these items had not been linked to the defendant. Appellant's point of error, however, refers to the State's alleged failure to provide him with notice of its possession of these items. A point of error on appeal must comport with the objection made at trial. *Cravens v. State,* 687 S.W.2d 748, 752 (Tex.Crim.App.1985).

We overrule appellant's fifth point of error.

In his sixth point of error, appellant contends that there was insufficient evidence to find that the knife he used was a deadly weapon. Initially, we observe that a knife is not a deadly weapon *per se. Williams v. State,* 575 S.W.2d 30, 32 (Tex. Crim.App.1979). Therefore, under the Tex. Penal Code, sec. 1.07(a)(11)(B) (Vernon 1974), the State must prove that a knife used in a particular offense was "in the manner of its use or *intended use ...* capable of causing death or serious bodily injury." *Id.* The State need not prove this allegation by expert testimony. *Brown v. State,* 716 S.W.2d 939, 946–47 (Tex.Crim. App.1986). Furthermore, wounds need not be inflicted for a knife to be considered a deadly weapon. *Id.*

In the instant case, the complainant testified that: (1) appellant put the knife in her back, forcing her to accompany him to his home; (2) the victim was afraid appellant would hurt her with the knife; and, (3) the victim considered the knife a deadly weapon. The knife was introduced into evidence. The distance between the assailant and the victim, as well as the size, shape, and sharpness of the knife are critical factors to consider in determining if a par-

ticular knife is a deadly weapon. *Id.* at 946.

In reviewing the sufficiency of the evidence, the critical inquiry is whether a rational trier of fact could have found the knife to be a deadly weapon. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Brown v. State,* 716 S.W.2d at 947. We find that the evidence was sufficient to support the finding that the knife was a deadly weapon.

We overrule the sixth point of error.

Affirmed.