**Bobby Carroll HARVEY and Robert Lee O'Quinn, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–87–00813–CR, 01–87–00814–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 30, 1988.

Discretionary Review Refused April 5, 1989.

Douglas M. O'Brien, Moen, Cain, Royce & O'Brien, Donald W. Rogers, Jr., Houston, for appellants.

John B. Holmes, Dist. Atty., Timothy G. Taft, Asst. Dist. Atty., for appellee.

## OPINION

Before DUGGAN, JACK SMITH and DUNN, JJ.

DUGGAN, Justice.

In a joint trial under separate indictments, a jury found appellants, Bobby Carroll Harvey and Robert Lee O'Quinn, guilty of possession of 200 to 400 grams of a controlled substance, phenylacetone, found two enhancement allegations in each appellant's indictment to be true, and assessed the punishment of each appellant at confinement for life. Two identical points of error are raised by each appellant; sufficiency of the evidence is not challenged.

Appellants contend in their first point of error that the trial court committed reversible error at the punishment phase of the trial by instructing the jury on the application of the parole laws pursuant to Tex. Code Crim.Proc. art. 37.07, sec. 4(a) (Vernon Supp.1988); *Rose v. State ("Rose II")*, 752 S.W.2d 529 (Tex.Crim.App.1988) (op. on reh'g).

Article 37.07, section 4(a), which requires the trial court to instruct the jury on the Texas parole laws, was held unconstitutional as a violation of the separation of powers and due course of law provisions of the Texas Constitution. *Rose v. State ("Rose I")*, 724 S.W.2d 832 (Tex.Crim.App.1987). In *Haynie v. State*, 751 S.W.2d 878 (Tex. Crim.App.1988), the court stated that, in its opinion on rehearing in *Rose II*, it "expressly held that in determining whether reversible error had occurred, a harmless error analysis as required by Tex.R.App.P. 81(b)(2) must be conducted." *Id.* at 879.

Rule 81(b)(2) provides:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

■ This standard of review places the burden of proof on the State to demonstrate that appellants suffered no harm because of the parole instruction. *See Taylor v. State*, 755 S.W.2d 548, 550 (Tex.App. —Houston [1st Dist.] 1988, pet. pending). In concluding that the defendant suffered no harm because of the parole instruction, the *Rose II* opinion considered: (1) the curative instruction given by the trial court as its "last word on the subject"; (2) the "facts of the offense [that] militate in favor of a harsh sentence;" and (3) the appellant's prior criminal record. *Rose*, 752 S.W.2d at 554–55; *see also Taylor v. State*, 755 S.W.2d at 551.

As to curative instruction, the trial court in the present case gave a cautionary instruction almost identical to the instruction given in *Rose*, informing the jurors that they were not to discuss or consider the manner in which the parole law applied to the appellants, and that such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas. This type of instruction creates a rebuttable presumption that the jury followed the trial judge's instructions and did not consider the applicability of parole. *Rose v. State*, 752 S.W. 2d at 554.

As to "facts of the offense [that] militate in favor of a harsh sentence," both appellants were arrested during the execution of a search warrant on their clandestine drug laboratory. Issuance of the warrant followed the surveillance by law enforcement officers of the two appellants after they were observed purchasing precursor chemicals used in the manufacture of phenylacetone. Upon arrest and search, the two were found to be in possession of 319.8 grams of phenylacetone, a controlled substance and a precursor to methamphetamine.

The nature of the offense, in combination with the pen packet exhibits showing their prior criminal records, compelled the jury to realize that the appellants were neither novice users nor *mere* users of illicit controlled substances, but were manufactur-

ers—persons operating at the foundation of illegal drug traffic.

The appellants' prior criminal records, proved by the pen packet exhibits and discussed by their attorneys in the punishment argument, also militated strongly in favor of extreme sentences for each of them.

Appellant O'Quinn had five prior felony convictions: for theft (two years), theft (five years), and burglary (two years), all in 1950; for theft (three years) in 1955; and for possession of heroin (life) in 1968.

Appellant Harvey had two prior felony convictions: possession of heroin, with a sentence of 99 years in 1977; and a second possession of heroin, with a sentence of five years in 1985. The jury saw and heard, both through pen packet exhibits and argument of defense counsel, that Harvey's 99–year sentence, his release, his five-year sentence, and his second release, all occurred within the 10–year period immediately prior to the present offense.

The evidence that the two appellants had been previously sentenced to terms of life and 99 years, respectively, made the jury unavoidably aware—totally apart from the court's parole law instructions or the prosecutor's argument—that some mechanism, such as parole, operates in law to allow some convicts early release from even maximum and near-maximum sentences. From the pen packets, the jury knew (as stated in closing argument) that O'Quinn received a life sentence in 1968 and "in January of 1987 he is back in Houston committing another serious offense," and that Harvey received 99 years and "[l]ess than eight years later he is committing another possession of heroin [in 1985]."

■ Appellants urge that the error of the statutory charge was compounded by the prosecutor's closing argument at the punishment phase of trial. The argument objected to is the following:

One last point. If you will look at page three of your charge, second, third— third full paragraph under the law applicable in this case: If the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good time credit equals one-third of the sentence imposed or 20 years whichever is less.

If you give Mr. Harvey and Mr. O'Quinn a life sentence and they serve ten years—

Appellant Harvey's attorney objected on the grounds that the jury was not to consider the manner in which parole law will be applied, noting that the prosecutor had made the same objection to appellant O'Quinn's argument earlier. The court overruled the objection, and the prosecutor continued:

If you consider ten years actual time and ten years good time—think about it this way. They only have to serve 20 years before he is eligible for parole. That means he could serve as little as ten years possibly. You can't decide because it says you are not to consider the manner in which the Board of Pardons and Paroles applies that sentence.

What I am telling you is this, ladies and gentlemen, anything less than life ... is not going to prevent these gentlemen from coming back out into the streets of Harris County, Texas, and doing the same thing that you have here and that you will be able to see and take back with you into the jury room in State's Exhibit No. 23 and 24 [the pen packets].

If we were to isolate the prosecutor's remark from the evidence (including pen packets) and the context of earlier appellants' arguments, the prosecutor's argument might well require our reversal under Tex.R.App.P. 81(b)(2). However, the evidence before the jury had shown that one appellant had been released from prison on a *previous* life sentence in less than 20 years, and that the other had been released on a 99–year sentence in less than eight years. Further, the remark was in response to appellants' arguments dealing with the same matters.

Appellant O'Quinn's attorney had earlier stated in his punishment phase argument that his client was 56 years old; that in

1950 he had received three sentences, for two, five, and two years; that in 1955 "[t]he next time he went up there, he did three years"; and that "[i]n 1967, he did life." He recommended that the jury assess punishment for his client at 40 years. "That's my magic number, 40 years."

Appellant Harvey's attorney, in recapping the evidence, had stated that "Mr. Harvey has got a 99 year sentence in his past. And he's in his 50's." He continued:

> And I'm not going to get up here and say "Give him 25 years or just the minimum. Don't give him 30, 35, maybe 40." I don't see any problem with 40. I think 40 or 35 under the circumstances for Mr. Harvey is not a totally absurd thing for me to stand up here and say to you to consider, given his age, given the totality of the circumstances.

Where appellants' attorneys concede that 40–year sentences are reasonable, considering the gravity of the offense and the two appellants' prior records, we are hard-pressed to say that the prosecutor, in his legitimate adversary role, cannot reasonably ask for life sentences.

We hold that, under the harmless error analysis required by Tex.R.App.P. 81(b)(2), the court's written parole charge and the prosecutorial argument complained of were harmless beyond a reasonable doubt.

Appellants' first point of error is overruled.

The remainder of the opinion, adding nothing to the jurisprudence of the State, is ordered not published. Tex.R.App.P. 90.

The judgment is affirmed.

JACK SMITH, J., concurs and dissents.

JACK SMITH, Judge, concurring and dissenting.

I concur with the majority opinion on appellants' convictions, but I respectfully dissent as to the affirmation of the punishment assessed.

As stated in the majority opinion, the burden is on the State to show that the inclusion of the unconstitutional parole instruction in the final court's charge was harmless error. I believe the State has failed to sustain its burden.

The prosecutor's closing argument, set out in the majority opinion, blatantly disregards the court's instruction to the jury that they were not to discuss or consider the manner in which the parole law applied to the appellant. In fact, the prosecutor specifically informed the jury how the parole law works, how good time is applied, and what effect these two have upon any punishment assessed by the jury.

The fact that the court gave an unconstitutional parole instruction to the jury and then permitted the prosecutor, over objection, to completely ignore the court's own instruction, compounds the error. This makes it impossible for me to conclude that the State has proved that the erroneous charge was harmless beyond a reasonable doubt.

I would affirm the conviction, reverse the punishment assessed, and remand the cause to the trial court for a new trial on punishment.