**Michael LOCKHART, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 45S00–8911–CR–851.**

Supreme Court of Indiana.

March 8, 1993.

---

1094

Daniel L. Bella, Crown Point, for Appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for Appellee.

SHEPARD, Chief Justice.

A Lake County jury convicted appellant Michael Lockhart of murdering a sixteen-year-old girl. Multiple deep stab wounds inflicted with a large knife left the victim mutilated to the point of being partially eviscerated. The trial court sentenced Lockhart to death. The aggravating circumstances were intentional murder during the commission of a robbery and a conviction in Texas for murdering a police officer. His case is before us on direct appeal. Ind. Appellate Rule 4(A)(7).

Lockhart alleges several specific errors which we summarize for purposes of introduction:

1) Evidence of other crimes admitted during the State's case-in-chief;

2) Expert testimony by a doctor who did not personally examine victims;

3) Admission of DNA test results;

4) Use of Lockhart's criminal history during the penalty phase;

5) Due process ramifications of evidence about an unrelated murder not reduced to conviction; and

6) Use of a Texas murder conviction as a statutory aggravating circumstance.

We affirm.

### Facts

Lockhart was convicted of murdering Windy Gallagher on October 13, 1987, but a review of the evidence which led to his conviction and sentence is best framed in chronological order, beginning with his actions the day before, on October 12, 1987.

On Monday, October 12, Tammy Lair was walking in her north-side Chicago neighborhood when Lockhart attacked her at knifepoint and fled with her purse. He drove off in a blue Toyota Celica. Lair survived the attack.

The next evening, across the state line in Griffith, Indiana, Christy Gallagher came home to the apartment where she lived with her mother and sister Windy. She saw no signs of forced entry. After spending about thirty minutes in the apartment, Christy discovered Windy's body in the bedroom, nude from the waste down, hands tied behind her back, her bra pushed up above her breasts. There was a large pool of blood, and her intestines were hanging out. Windy had been stabbed four times in the neck and seventeen times in the abdomen. Among the items missing from the apartment were a picture of Windy, Windy's grey clutch purse, and a pocket calendar with Windy's name on it. Investigators discovered fingerprints on a water glass and a palm print on the wall of the bedroom. At trial, an expert testified that the prints matched Lockhart's.

Two days after the Gallagher murder, Tammy Lair learned that a man on the south side of Chicago had her purse. When she retrieved it, she discovered Windy Gallagher's grey clutch purse and calendar inside. At trial, Lair recognized a photograph of the blue Toyota and identified Lockhart as her attacker. Christy identified the calendar and grey purse as belonging to her sister.

In early November 1987, Lockhart and the blue Toyota spent several days at a motel in Toledo, Ohio. Lockhart told the motel manager that he had lost his keys and requested a ride to a local car dealer so he could get a new set. A motel employee drove Lockhart to a dealer, where Lockhart test-drove a red Chevrolet Corvette. During the test drive, Lockhart pulled a gun on the car salesman, robbed him of his wallet, pushed him out of the car and drove off.[1] A few days later, Toledo police were called to the motel to tow the blue Toyota which Lockhart abandoned. The motel manager and employee identified Lockhart at trial.

Tina Walgenbach, a woman in Chicago who had dated Lockhart, testified that Lockhart missed her Halloween party in 1987, but that he came back to Chicago in a red Corvette a week or two later. He told her he planned to go to Florida.

Less than three months later, on January 20, 1988, fourteen-year-old Jennifer Colhouer was raped and stabbed to death in a bedroom of her parents' home in suburban Tampa, Florida. Eyewitnesses placed Lockhart and the red Corvette in the neighborhood on the day of the murder. A DNA comparison of semen found on the victim and blood drawn from Lockhart showed a match. There were several striking similarities to the Gallagher murder, so the trial judge admitted evidence of the Florida crime under the *modus operandi* rule to prove identity.

Lockhart's crime spree eventually took him to Texas, where he murdered a police officer in the city of Beaumont on March 22, 1988. A Texas jury found him guilty of capital murder on October 4, 1988. During jury selection, Lockhart tried to escape the courtroom by jumping through a third-story glass window. He was injured in the fall. While recuperating in the hospital, he volunteered a statement that he had killed between twenty and thirty people and inquired as to how that might compare with Ted Bundy.[2] As with the armed robbery from Ohio, evidence about Lockhart's crime and statements in Texas were kept from the jury until the penalty phase.

### I. Evidence of Other Crimes

Lockhart argues that the trial court erred by admitting evidence of the Chicago robbery and the Florida murder during the State's case-in-chief. We discuss the admissibility of these two incidents separately, turning first to the robbery of Tammy Lair in Chicago on October 12, 1987.

#### A. Chicago Robbery

■ Lockhart correctly contends that evidence of criminal acts other than those charged are generally inadmissible to prove a defendant's guilt. However, "such evidence may properly be introduced for the purpose of showing intent, motive, purpose, identity, or a common scheme or plan." *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872. "That is, such evidence may be admissible despite its tendency to show bad character or criminal propensity, if it makes the existence of an element of the crime charged more probable than it would be without such evidence." *Id.*

The facts before the trial court clearly supported the trial judge's decision to admit the evidence: Lockhart robbed Lair of her purse on Monday, Gallagher was killed in an adjacent county and her purse taken on Tuesday, Lair retrieved her purse on

---

1. Evidence of this armed robbery was not presented to the jury until the death penalty phase.

2. Bundy, one of the most infamous criminals of our era, was executed by the State of Florida on January 24, 1989, "nearly 15 years after he embarked on a trail of murder that is believed to have accounted for the deaths of 30 or more young women around the nation. Most of his victims were strangled, then sexually abused, then mutilated." Dirk Johnson, *For Families, Killer's Death Eases Doubts but Not Pain*, N.Y. Times, Feb. 13, 1989, at A1.

Thursday and found Gallagher's purse and calendar inside. This is strong circumstantial evidence connecting Lockhart to the murder of Windy Gallagher. It is probative of identity and thus makes the existence of an element of the crime charged more probable than it would be without such evidence. The fact that Lair's purse passed through the hands of one or more persons before she recovered it goes to the weight of the evidence in this instance and not to its admissibility. There was no error in admitting Tammy Lair's testimony.

### B. Florida Murder

We likewise affirm the trial court's decision to admit evidence about the killing of Jennifer Colhouer as a "signature crime" probative of identity.

As we said recently in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, in a review of the various theories under which evidence of other crimes may be admitted:

> [T]he State may prove identity by showing that the similarities between the prior offense and the crime charged are so strong and the method so clearly unique that it is highly probable that the perpetrator of both is the same person. "However, the repeated commission of similar crimes is not enough to qualify for the exception to the general rule. The acts or methods employed must be so similar, unusual, and distinctive as to earmark them as the acts of the accused."

*Id.* at 1340 (citation omitted) (quoting *Willis v. State* (1978), 268 Ind. 269, 272, 374 N.E.2d 520, 522).

Comparison of the Colhouer and Gallagher murders shows them to be earmarked as acts of the accused. Indeed, had Lake County investigators been on the scene in Florida, they no doubt would have concluded that the killer of Windy Gallagher had struck again a thousand miles away. They would have observed that both victims were teenage girls, killed in their own homes in the late afternoon hours after school. Neither case showed any signs of forced entry, suggesting the *modus operandi* of a criminal who enters a dwelling more through guile than strength. Both victims were found with their bras pushed up around the breasts. Both had their pants and underwear removed. Photographs show that a cloth strap has been placed around Gallagher's lower face, causing abrasions just at the chin and below; Colhouer has similarly suffered abrasions just under the chin.

Both suffered large, deep abdominal wounds in the same area, inflicted with a large knife and with great force. Both suffered wounds with irregular edges caused by a horizontal cutting motion as the blade was removed, indicating particular ferocity and an intention to mutilate. Both suffered small, prickly puncture wounds about the breasts, not fatal in and of themselves, but a sign that the perpetrator tortured his victims. Both bodies were found in a bedroom; both had been moved after the stabbings. In each case, the killer fled with a picture of his victim.

As the prosecuting attorney told the jury in final argument, Lockhart left "a signature as it were with the point of a knife." (Record at 2306). There was no error in the admission of the Florida murder. It was truly a signature crime, highly probative of the identity of Windy Gallagher's killer.

### II. Pathologist's Testimony

The prosecution called a Florida pathologist, Dr. Joan Wood, in order to establish that the Colhouer and Gallagher homicides were sufficiently similar to warrant admitting evidence about Florida crime. Wood was the chief medical examiner in the Florida county where Jennifer Colhouer was murdered. She compared the autopsy reports from the two murders and rendered an expert opinion about the similarities which we have noted above. She did not personally conduct either of the postmortem examinations.[3]

---

3. Naturally, Dr. Wood would not have conducted the autopsy of Windy Gallagher in Indiana. The autopsy of Jennifer Colhouer was conducted by another Florida doctor who died six months later. Hence, he was unavailable for trial.

Lockhart argues without great precision that it was error to allow Dr. Wood to testify as she did. He correctly notes that no Indiana case can be found which says a pathologist can compare autopsy results prepared by *two* other doctors and provide an expert opinion regarding similarities. Nor, however, does he cite any case which says that she cannot.

We have long held that it is proper for an expert to give an opinion based upon an autopsy report prepared by another. *Bean v. State* (1978), 267 Ind. 528, 371 N.E.2d 713; *Morris v. State* (1977), 266 Ind. 473, 364 N.E.2d 132, *cert. denied*, 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462. It requires no great leap to allow an expert to give an opinion based on two such reports.

■ Expert testimony is admissible so long as the subject matter is related to some scientific field beyond the knowledge of the average lay person. The witness must have sufficient skill, knowledge or experience in the field such that the witness' opinion or inference will aid the trier of fact. *Wissman v. State* (1989), Ind., 540 N.E.2d 1209. The determination of whether a witness is qualified to testify as an expert is assigned to the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion. *Id.*

Lockhart does not dispute Dr. Wood's qualifications as an expert: fourteen years a doctor, conductor of more than 4000 autopsies, expert witness in more than 200 trials. Dr. Wood's testimony clearly was within her area of expertise in a scientific field beyond the knowledge of the average lay person. There was no abuse of discretion in allowing it.

### III. DNA Evidence

■ Lockhart next challenges the admissibility of DNA test results used to link him to the Florida murder through comparison of genetic material. He contends that the testing procedures employed by Cellmark Laboratories were unreliable. Subsequent to the briefing of this appeal, we addressed an identical claim in *Hopkins v. State* (1991), Ind., 579 N.E.2d 1297, concluding that "once the trial court has ruled

the witness qualified as a matter of law to give expert testimony regarding DNA analysis, subsequent evaluation of that evidence goes only to its weight as a matter of fact." *Id.* at 1303. Lockhart does not challenge the qualifications of the DNA experts who testified, only their methods. *Hopkins* thus disposes of his claim.

### IV. Non-statutory Aggravators

■ During the penalty phase the State presented evidence of two aggravating circumstances: that Lockhart's killing of Windy Gallagher occurred while he committed or attempted to commit a robbery, Ind.Code Ann. § 35–50–2–9(b)(1)(G) (West Supp.1992), and that Lockhart had been convicted of another murder, Ind.Code Ann. § 35–50–2–9(b)(7). The State also introduced the following evidence of Lockhart's prior criminal history: (1) a Wyoming robbery conviction; (2) an Ohio burglary allegedly committed by Lockhart on August 4, 1987, in which he stole the gun used to kill the Texas officer; (3) the Ohio robbery allegedly committed by Lockhart on November 9, 1987, during which he took the red Corvette; and (4) Lockhart's alleged rape of his ex-wife on November 7 and 8, 1987.

Appellant argues that the trial court erred when it allowed the State to introduce such evidence during its case-in-chief when the conduct had not been designated as an aggravating circumstance in the State's death penalty count. Appellant argues that the Indiana death penalty statute does not permit "the State to conduct a witch hunt which rambles through the defendant's entire criminal history, as was done here." (Appellant's Brief at 60). Because appellant did not object to the admission of the evidence about his criminal history at trial, however, such error was not preserved for appeal. *Woods v. State* (1989), Ind., 547 N.E.2d 772, 796, *on reh'g* (1990), Ind., 557 N.E.2d 1325, *cert. denied*, —— U.S. ——, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991).

### V. Evidence of an Unrelated Murder

■ As we noted earlier, during the guilt/innocence phase of this case the jury

heard evidence of an unrelated, unadjudicated murder allegedly committed by Lockhart in Florida. At the conclusion of the presentation of evidence in the guilt/innocence phase the court instructed the jury to consider the evidence of that other murder only on the issue of identity.

■ Lockhart argues that the trial court erred when it allowed the same jury to make a sentencing recommendation when the jury already was unduly prejudiced against him by hearing the evidence of the Florida murder and by having convicted him of the instant murder. Although the State did not charge the aggravating circumstances of committing another murder at any time, Ind.Code Ann. § 35–50–2–9(b)(8), appellant argues that the court's reading to the jury the list of all twelve possible aggravating circumstances, including (b)(8), may have led the jury to believe it could rely on the Florida murder in recommending imposition of the death penalty. The aggravating circumstance of commission of another murder not reduced to conviction is unconstitutional as applied when the other murder is unrelated to the instant murder. *State v. McCormick* (1979), 272 Ind. 272, 397 N.E.2d 276.

Following are the facts pertinent to this issue.

The judge read to the jury the list of twelve aggravating circumstances from the death penalty statute, Ind.Code Ann. § 35–50–2–9(b), on three occasions during the trial. First, he instructed each of the two jury panels on the death penalty statute. He instructed the first panel:

The defendant is also facing a second count and for procedural reasons that second count won't even be read to you, but it alleges facts to raise the death penalty and a separate penalty section of the statute provides that the State may seek the death penalty be imposed upon the defendant by charging the existence of at least one of the following aggravating factors:

1. The defendant committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape or robbery.

2. The defendant committed the murder by the unlawful detonation of an explosive with intent to injure person or property.

3. The defendant committed the murder by lying in wait.

4. The defendant who committed the murder was hired to kill.

5. The defendant committed the murder by hiring another person to kill.

6. The victim of the murder was a corrections employee, fireman, Judge or law enforcement officer, and either the victim was acting in the course of duty or the murder was motivated by an act the victim performed while acting in the course of duty.

7. The defendant has been convicted of another murder.

8. *The defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder.*

9. The defendant was under a sentence of life imprisonment at the time of the murder.

10. The defendant was serving a term of imprisonment and on the date of the murder the defendant had 20 or more years remaining to be served before the earliest possible release date as defined by I.C. 35–38.

11. The defendant dismembered the victim.

12. The victim of the murder was less than 12 years of age.

Now, the State must prove to you the aggravating factor or factors beyond a reasonable doubt and I'm sure you all heard this term before.

(Record at 20–22) (emphasis added). The judge also instructed the first panel that the jury is not required to consider all the possible aggravating circumstances:

Now, the statute requires that you consider the aggravating factors that are charged. It is not going to include all of these factors. I've just read everything in the statute that provides for the penal-

ty, but those have not all been charged. You're to consider the mitigating circumstances and recommend to the Judge whether or not the death penalty should be imposed.

(Record 24–25).

The judge instructed the second jury panel on the statutory aggravating circumstances:

... in the event a verdict is returned of guilty and only in that event ... the law provides that the State may seek to have the death penalty imposed by alleging on a separate sheet from the charging information certain facts, any one of which can be one of the aggravating factors, which is listed in the statute. The first of these could be, the defendant committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape or burglary.

Secondly, they may seek the death penalty by alleging that the defendant committed the murder by the unlawful detonation of an explosive with the intent to injure person or damage property.

The third ground by statute is, that the defendant committed the murder by lying in wait.

The fourth ground is that the defendant who committed the murder was hired to kill.

The fifth ground, the defendant committed the murder by hiring another person to kill.

Sixth ground is that the victim of the murder was a corrections employee, fireman, Judge, or law enforcement officer, and either the victim was acting in the course of duty or the murder was motivated by an act the victim performed while acting in the course of duty.

The seventh ground, the defendant has been convicted of another murder.

*The eighth ground, the defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder.*

Nine, the defendant was under a sentence of life imprisonment at the time of the murder.

Ten, the defendant was serving a term of imprisonment and on the date of the murder the defendant has twenty or more years remaining to be served before the earliest possible release date as defined by I.C. 35–3–8 [sic].

Eleven, the defendant dismembered the victim.

Twelve, the victim of the murder was less than twelve years of age.

Now, the State must prove one of those aggravating factors beyond a reasonable doubt in order for the death penalty to be imposed, but the defendant may present additional evidence relevant to the aggravating circumstances, any one of those that I've mentioned....

(Record at 583–585) (Emphasis added). The judge did not tell the second panel that it would determine only whether the *charged* aggravating circumstances were proven.

At one point during jury selection, the prosecuting attorney explained to potential jurors that if a penalty phase occurs, the State will then have to prove that "this is the type of murder that fits into one of about eleven categories that make [defendant] eligible." (Record at 657); *see also* (Record at 729) (explaining that State must establish the murder is a special kind of murder, falling into one of twelve categories of aggravators).

After return of the guilty verdict and before presentation of evidence in the penalty phase, the court instructed the jury on the death penalty statute. The jury was informed that "[t]he law provides that the State may seek the death penalty for Murder by charging the existence of at least one of the following aggravating circumstances...." (Record at 297A). The court read to the jury the twelve aggravating circumstances as defined by the statute, including: "8. The defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder." (*Id.*). The court informed the jury of the two charged aggra-

vating factors, and that the burden is on the State to prove beyond a reasonable doubt one or both of the charged aggravating circumstances. The court also instructed the jury that it could consider all the evidence introduced at the trial stage of the proceedings together with any new evidence presented during the sentencing hearing.

In the court's instructions at the close of the penalty phase, it again read the jury the list of twelve aggravating circumstances from the death penalty statute. The court then told the jury the elements the State must prove to establish the two charged aggravating circumstances. The court also instructed the jury: "The list of aggravating circumstances which were previously read to you are the only aggravating circumstances that you may consider. You are not allowed to take account of any other facts or circumstances as the basis for deciding that the death penalty would be an appropriate punishment in this case." (Record at 319A) Finally, the court told the jury: "You are to consider both aggravating and mitigating circumstances and recommend whether the death penalty should be imposed. You may consider all the evidence introduced at the trial resulting in the defendant's conviction of murder, together with any new evidence presented at this hearing." (Record at 324A).

We agree with Lockhart that the trial court erred when it read to the jury on several occasions the list of twelve aggravating circumstances, including the unadjudicated murder provision. If the State had charged the unadjudicated Florida murder as an aggravating circumstance in this case under Ind.Code Ann. § 35–50–2–9(b)(8), use of such aggravator would have been error because the aggravator is unconstitutional when applied to a situation in which the other murder is not reduced to conviction and is unrelated to the instant murder. *McCormick*, 272 Ind. 272, 397 N.E.2d 276.

This Court held in *McCormick* that subsection (b)(8) of the death penalty statute is unconstitutional when the other unadjudicated murder is unrelated to the instant murder because a defendant's due process

rights are violated when he is in effect tried on the other murder claim during the penalty phase "to a jury which has been undeniably prejudiced by having convicted him of an unrelated murder." 272 Ind. at 278, 397 N.E.2d at 280. The Court reasoned that proving the unrelated murder to an undeniably prejudiced jury in the penalty phase opens the door to death sentence recommendations resting upon a level of proof lower than proof beyond a reasonable doubt. *Id.*

The instruction listing the twelve statutory aggravating circumstances was not necessary to convey to the jury its duties in applying the law to determine the sentence in this case, and drawing the jury's attention to aggravator (b)(8) was error when the jury had heard in the guilt/innocence phase properly-admitted evidence of the unrelated Florida murder.

When a trial court errs in this respect, we reverse only if defendant establishes he was prejudiced by the court's instructions. *Springer v. State* (1984), Ind., 463 N.E.2d 243. On appeal, defendant bears the burden of showing prejudice to his substantial rights. *See Boyd v. State* (1991), Ind., 564 N.E.2d 519.

Lockhart claims that the court's instructions prejudiced him to the extent the instructions allowed the jury which convicted him to consider evidence of the unrelated Florida murder as an aggravator in the penalty proceeding. He fails to demonstrate, however, how the judge's instructions in any way affected the outcome of the penalty proceeding.

Although the jury was informed of all possible aggravating circumstances in the death penalty statute, it was charged to determine whether the State carried its burden of proving beyond a reasonable doubt the existence *of one of the two charged aggravators*. In addition, in determining sentence, the trial judge found that the State proved beyond a reasonable doubt that Lockhart killed Windy Gallagher while committing or attempting to commit a robbery and that he had a previous conviction for murder. The court further found that no mitigating circum-

stances were present. It held that the mitigating factors were outweighed by the aggravating circumstances and thus a death sentence was entered.

Given the strength of the evidence supporting the aggravating circumstances and the absence of mitigating factors in this case, we conclude that the court's erroneous instructions were harmless.

## VI. Texas Conviction as an Aggravating Circumstance

Lockhart argues that the trial court erred in denying his motion to dismiss the second allegation of the death penalty count. Count II of the amended information contained the State's request for the death penalty, and charged the following as an aggravating circumstance supporting the death penalty: "On or about October 4, 1988, Michael Lee Lockhart was convicted of murder in the 186th District Court of Bexar County, Texas, Cause 88–CR–3197." (Record at 18A). Under Ind.Code Ann. § 35–50–2–9(a) (West Supp.1992), the State is entitled to seek a death sentence for murder by alleging at least one of the twelve aggravating circumstances enumerated in subsection (b). Under subsection (b)(7), the State establishes an aggravating circumstance if it proves beyond a reasonable doubt that "[t]he defendant has been convicted of another murder."

Appellant argues that the Texas conviction was not available as a (b)(7) aggravator because that conviction was not a final conviction under Texas law. For purposes of Texas evidence rules, a conviction becomes "final" when it is affirmed on appeal. *E.g., Taylor v. State,* 755 S.W.2d 548, 552 (Tex.Ct.App.1988). Non-final convictions are inadmissible hearsay, Texas Rules of Criminal Evidence 803(22), *in* TEXAS RULES OF COURT—STATE AND FEDERAL (West 1992), and are thus not available as evidence in Texas sentence enhancement proceedings. *Taylor,* 755 S.W.2d at 552. Lockhart argues that because Texas courts would not recognize his Texas conviction for penalty enhancement purposes, Indiana courts should not consid-

er the "non-final" Texas conviction for such purposes.

The trial court denied Lockhart's motion to dismiss because the Texas proceeding did in fact result in a "conviction" for murder and thus falls within the aggravating circumstance enumerated in (b)(7). The trial court concluded: "[A] sentence makes a Texas charge a Final Judgment whether appealed or not." (Record at 265A). The court determined that Texas's admissibility requirement that a conviction be affirmed on appeal is merely a rule of evidence that is "peculiar to Texas." (*Id.*). Texas courts recognize that a judgment entered on a jury's verdict and assessment of punishment is indeed a "conviction." *Cf. Morgan v. State,* 515 S.W.2d 278, 280 (Tex.Crim. App.1974).

In incorporating a finality requirement for admission of convictions in court proceedings, Texas lawmakers apparently made a judgment that judicial economy and the integrity of penalty enhancement proceedings are furthered by prohibiting the admission of prior convictions until the validity of such convictions is affirmed on appeal. Indiana lawmakers, however, have not chosen to impose such a requirement on the admission of convictions in penalty enhancement or death penalty proceedings. The fact that Lockhart's Texas conviction could not be used as evidence in a Texas penalty enhancement proceeding has no effect on the availability of the Texas conviction as an aggravating circumstance under the Indiana death penalty statute. Indiana has not chosen to require a conviction to be "final" for admission in subsequent proceedings.

In using Lockhart's Texas murder conviction as an aggravating circumstance supporting a death sentence Indiana courts rely on the Texas proceeding's determination of the facts and the defendant's guilt or innocence. Indiana courts do not, however, rely on another state's laws to determine the admissibility of the other state's convictions in Indiana proceedings or to determine the effect of such convictions under Indiana law. We apply this principle in the context of habitual offender proceed-

ings, *see, e.g., Galmore v. State* (1984), Ind., 467 N.E.2d 1173 and it is just as applicable to death penalty proceedings.

In habitual offender cases we have held that the interpretation of a prior conviction from another jurisdiction is determined by Indiana law. "[U]nder Indiana law the classification of crimes as felonies or misdemeanors in other states is not relevant for purposes of establishing a prior felony conviction in determining habitual criminal status in Indiana." *Galmore*, 467 N.E.2d at 1177; *see also Collins v. State* (1981), 275 Ind. 86, 97, 415 N.E.2d 46, 54–55, *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (Arizona's classification of burglary not relevant for purposes of establishing prior felony conviction in Indiana habitual criminal proceeding).

Therefore, we look to Indiana law to determine whether Lockhart's Texas murder conviction qualifies as evidence that "[t]he defendant has been convicted of another murder." Ind.Code Ann. § 35–50–2–9(b)(7) (West Supp.1992). In cases interpreting our death penalty statute, we have stated that a "conviction" under (b)(7) "means the entry by the trial court of a judgment of conviction." *Hough v. State* (1990), Ind., 560 N.E.2d 511, 519, *corrected on reh'g; accord Thompson v. State* (1986), Ind., 492 N.E.2d 264. It is also instructive to note that the Texas Court of Criminal Appeals itself holds that there need not be a "final" conviction for prior criminal conduct to be admissible in the penalty phase of a capital trial. *See, e.g., Hammett v. State*, 578 S.W.2d 699 (Tex. Crim.App.1979).

The evidence demonstrates that the State did prove beyond a reasonable doubt that Lockhart was indeed "convicted" of another murder in the Texas proceeding. Therefore, the trial court did not err in denying Lockhart's motion to dismiss the second allegation of the death penalty count.

The record in this case demonstrates that the trial court was warranted under Indiana law in entering the conviction and the penalty. We affirm the judgment of the trial court.

GIVAN, DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs and dissents with separate opinion.

DeBRULER, Justice, concurring and dissenting.

In this instance, the trial judge concluded that there were two aggravating circumstances proved, namely, 1) that the killing occurred while committing a robbery, (b)(1); and 2) the conviction of another murder, (b)(7); and that the weight of each was greater than the weight of mitigating circumstances in that there were no mitigating circumstances to be weighed.

In alleging the (b)(1) aggravator, the State argued that appellant "intentionally killed Windy Gallagher during the commission or attempted commission of a robbery." There was no more specific allegation, and the trial court correctly instructed the jury pursuant to the robbery statute that the state must prove a taking of property "by" threat, force, or fear. I.C. 35–42–5–1. "By," within the robbery statute, does not signify close proximity in time, place, and continuity of action, as does "while" or "during" in the case of the felony-murder statute, or the death sentence statute in (b)(1), but signifies instead the means or agency by which the taking is accomplished. *Payton v. State* (1965), 246 Ind. 401, 206 N.E.2d 143; *Cross v. State* (1956), 235 Ind. 611, 137 N.E.2d 32; *Rains v. State* (1893), 137 Ind. 83, 36 N.E. 532. The circumstantial evidence here is not sufficient to warrant the inference beyond a reasonable doubt that the violence against the victim was the means or agency of the taking of the victim's purse and photo. There is but a suggestion that the victim's fear and suffering, as severe and as horrible as it must have been, was related to the taking of her small things. The (b)(1) aggravator consists of an intentional killing during the taking or attempt at taking property by violent means. There is some circumstantial evidence of all of the elements of this aggravator. While circumstantial evidence can have sufficient substance to warrant the conclusion of a rea-

sonable trier of fact beyond a reasonable doubt that this aggravator exists, in my view this circumstantial evidence does not have that quality. Appellant does not specifically raise this issue; however, it is part and parcel of this Court's independent assessment of the appropriateness of the ultimate penalty. Consequently, I find that the penalty is not appropriately rested upon this aggravator.

In alleging the (b)(7) aggravator, the State argued that "the defendant has been convicted of another murder." I construe this aggravator to have three essential elements: (1) that the conviction be final in the sense that the determination of guilt was affirmed on direct appeal, or that the direct appeal of the conviction was waived; (2) that the conviction occurred prior to the act of killing upon which the present charge is based; and (3) that the conviction was for an intentional or knowing murder rather than a felony-murder. The majority opinion rejects the finality requirement of (1), above; the requirement of (2) above was rejected in *Hough v. State* (1990), Ind., 560 N.E.2d 511; and the requirement of (3) above is satisfied. I respectfully dissent to the construction placed upon this aggravator in the majority opinion. Since the State did not prove that the Texas conviction was affirmed on appeal, or appeal therefrom was waived, the penalty of death is not appropriately rested upon this aggravator. Consequently, I would set aside the sentence of death and order a new sentencing hearing before the court to permit the State to prove the (b)(7) aggravator, or in lieu thereof, the imposition of a sentence of sixty years. I do, however, vote to affirm the conviction.