## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 16 2018, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rodney T. Sarkovics
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Myles Kendall McMahan, *Appellant-Defendant,* | August 16, 2018 |
| | Court of Appeals Cause No. 17A-CR-3028 |
| v. | Appeal from the Hamilton Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Paul A. Felix, Judge |
| | Trial Court Cause No. 29C01-1611-F5-8782 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Myles McMahan (McMahan), appeals his conviction and sentence for burglary, a Level 5 felony, Ind. Code § 35-43-2-1; resisting law enforcement, a Level 6 felony, I.C. § 35-44.1-3-1(b); and criminal mischief, a Class A misdemeanor, I.C. § 35-43-1-2(a)(1).

[2] We affirm.

# ISSUES

[3] McMahan presents five issues on appeal, which we consolidate and restate as the following four issues:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to support McMahan's burglary conviction;

(2) Whether the trial court committed fundamental error by admitting evidence pursuant to Indiana Rules of Evidence 404(b);

(3) Whether the trial court improperly instructed the jury; and

(4) Whether McMahan's sentence is inappropriate in light of the nature of the offenses and his character.

# FACTS AND PROCEDURAL HISTORY

[4] In the early morning hours of November 26, 2016, McMahan and his girlfriend, Terryn Crittenden (Crittenden), drove to Coast To Coast, a car dealership store located in Fishers, Indiana. When they arrived at the store, McMahan

awakened Crittenden, who was sleeping, and informed her that he used a rock to break the store's window. Moments later, the two walked into the building, but when the alarm sounded, they exited the building and drove away.

[5] Omar Barham (Barham), who owns Coast To Coast, received a call from the alarm company that monitors his business and was told that the motion detector at the showroom had been activated. Because Barham had experienced some problems with the motion detector, he advised the alarm company to disregard the alert. After twenty or thirty minutes had passed, McMahan and Crittenden drove back to the Coast To Coast building. McMahan left Crittenden inside the vehicle and again went back inside the building. The alarm company again called Barham and reported that another motion sensor in another part of the store had been triggered. This time, the alarm company contacted the police. Also, Barham drove to the store.

[6] Officer Joseph Hancock (Officer Hancock) of the Fishers Police Department was first to arrive at the Coast To Coast building. As he approached the building, he saw McMahan, who was wearing a "[g]ray sweatshirt and light-colored pants" inside the Coast To Coast building. (Transcript Vol. II, p. 166). Upon seeing Officer Hancock, McMahan ran "through the show room area" and exited through the "southwest corner of the [store] where the broken" window was. (Tr. Vol. II, p. 168). While in foot pursuit, Officer Hancock yelled numerous times, "[P]olice. Stop." (Tr. Vol. II, p. 168). However, McMahan did not adhere to Officer Hancock's commands, and he ran toward a Dodge pickup truck. When he got to the truck, McMahan yelled at Crittenden

to let him inside. McMahan jumped in the back seat, and Crittenden sped off. Officer Hancock ran back to his vehicle, activated his lights, and radioed for assistance.

[7] Crittenden first drove to a parking lot, where she stopped momentarily, backed out, and then drove south on Briton Park Road. While driving south on Britton Park Road, Crittenden turned east on 131st street, and proceeded south on State Road 37, where she merged onto I-69 southbound and thereafter joined 465 East. At the "[S]hadeland and 56th Street exit," the Indianapolis Metropolitan Police Department officers deployed "stop sticks" and the Dodge pickup truck came to a stop. (Tr. Vol. II, p. 174). Once stopped, the officers initiated a "felony stop," which involved ordering the occupants to exit the vehicle. (Tr. Vol. II, p. 174). Crittenden got out of the driver's seat, and McMahan exited from the back-passenger seat.

[8] Lieutenant Kobli (Lieutenant Kobli) of the Fishers Police Department, who had assisted Officer Hancock in the highspeed chase, performed a safety sweep. There were no additional occupants, but Lieutenant Kobli "happened to notice a set of keys with a dealer tag on them" on the bed of the pickup truck. (Tr. Vol. II, p. 207). The police later established that the keys belonged to Coast To Coast.

[9] On November 28, 2016, the State filed an Information, charging McMahan with Count I, burglary, a Level 5 felony; Count II, auto theft, a Level 6 felony; Count III, resisting law enforcement, a Level 6 felony; Count IV, theft, a Class

A misdemeanor; and Count V, criminal mischief, a Class A misdemeanor. The State filed an enhancement charge to the Class A misdemeanor theft charge, elevating it to a Level 6 felony based on a prior theft conviction. On November 3, 2017, the State moved to dismiss the Level 6 felony auto theft charge.

[10] A jury trial was conducted from November 6 through November 8, 2017. Barham testified that when he arrived at the Coast To Coast building on the day of the break-in, he found that a window had been shattered by a large rock, furniture had been knocked around, and a key to a Mercedes Benz was missing.

[11] During the police investigation, Crittenden and McMahan had told the police that there was a third person with them on the day of the break-in. At his jury trial, McMahan consistently testified that there was a third person, "James," whom he had never met until that night. (Tr. Vol. III, p. 54). McMahan described "James" as a "dark skin, skinny guy with dreads . . . . he's like my size but he's a little bigger than me." (Tr. Vol. III, p. 81). McMahan then claimed that he had no role in the break-in, and he testified that it was James who broke the window to the building, while he remained in the Dodge pickup truck to receive "oral sex" from Crittenden. (Tr. Vol. III, p. 54).

[12] Detective David Flynn (Detective Flynn) of the Fishers Police Department, testified that while investigating the case, he watched the Coast To Coast surveillance video, and thereafter questioned Crittenden. During the second interview, Crittenden recanted her previous statement, indicating that the third person, James, was not present during the burglary. Crittenden confessed to

Detective Flynn that she and McMahan initially entered the Coast To Coast building, and that they retreated when the alarm sounded. Crittenden stated that the second time, McMahan entered the Coast To Coast building "by himself." (Tr. Vol. III, p. 36). Officer Hancock testified that McMahan was the man he saw inside the Coast To Coast building during the burglary. At the close of the evidence, the jury returned a guilty verdict for the Level 5 felony burglary, Level 6 felony resisting law enforcement, and Class A misdemeanor criminal mischief. The State subsequently dismissed the theft enhancement charge.

[13] On December 7, 2017, the trial court conducted a sentencing hearing, and subsequently sentenced McMahan to six years in the Department of Correction (DOC) for the Level 5 felony burglary conviction, and ordered the last 545 days of that sentence to be served on work release. As for the Level 6 felony resting law enforcement conviction, McMahan was sentenced to two and one-half years in the DOC. Finally, the trial court sentenced McMahan to 365 days in the Hamilton County Jail for the Class A misdemeanor criminal mischief conviction. McMahan's sentences are to be served concurrently, for an aggregate sentence of six years.

[14] McMahan now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## A. *Sufficiency of the Evidence*

McMahan contends that the evidence is insufficient to support his conviction for Level 5 felony burglary. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the judgment. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. It is not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id*. The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

To convict McMahan of Level 5 felony burglary, the State needed to prove that he: (1) broke and entered into the Coast To Coast building or structure; (2) with the intent to commit a felony or theft inside. *See* I.C. § 35-43-2-1. McMahan's primary argument is that he cannot be guilty of burglary because the State presented no evidence that he intended to commit a felony or theft within the Coast To Coast building.

As our supreme court has explained, "a burglar's intent to commit a specific felony at the time of the breaking and entering may be inferred from the circumstances." *Baker v. State*, 968 N.E.2d 227, 229-30 (Ind. 2012) (citations and quotations omitted). "Circumstantial evidence alone is sufficient to sustain

a burglary conviction." *Id*. at 230.  Further, we note that evidence of intent "need not be insurmountable," but there must be a "specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony."  *Freshwater v. State*, 853 N.E.2d 941, 944 (Ind. 2006). We find two cases instructive in analyzing McMahan's claim.

[18]  In *Sipes v. State*, 505 N.E.2d 796, 797 (Ind. 1987), our supreme court found sufficient evidence that Sipes intended to commit theft when he was found standing near a table with money on it and then fled when the homeowner screamed.  The *Sipes* court explained, "[T]he fact that it was late at night and that [Sipes] was in a home where he had not been invited was evidence from which a jury could infer that he was guilty of breaking into the home with intent to steal."  *Id*.

[19]  In *Wormbly v. State*, 550 N.E.2d 95, 97 (Ind. Ct. App. 1990), *trans. denied*, a panel of this court found sufficient evidence to support Wormbly's intent to commit theft.  In that case, Wormbly had broken into the attic of a bar and cut a hole in the ceiling leading down to where cash and merchandise were kept. *Id*.  This court reasoned, "[I]t can be inferred that Wormbly . . . [was] approaching valuable property for the purpose of taking it when the police interrupted [his] approach."  *Id*.

[20]  Here, McMahan's conduct was similar to that of the defendants in both *Sipes* and *Wormbly*.  At trial, evidence was presented that a window to the Coast To Coast building had been broken, furniture had been moved around, and a key

fob to a Mercedes Benz was missing. When Officer Hancock arrived, McMahan ran through the broken window toward a Dodge pickup truck that drove away after he entered it. The Dodge pickup truck, which was being driven by Crittenden, led Officer Hancock and other officers on a high-speed chase, which entailed entering the interstate. Eventually, the Dodge pickup truck was stopped at the "Shadeland and 56th Street exit" after the Indianapolis Metropolitan Police Department officers deployed "stop sticks." (Tr. Vol. II, p. 174). Following a felony stop, Crittenden and McMahan were ordered out of the vehicle. While conducting a safety sweep, Lieutenant Kobli found a key fob on the bed of the dodge pickup truck. The police later established that the key fob was for a Mercedes Benz owned by Coast To Coast.

[21]   Without any evidence to the contrary, it is reasonable for a jury to infer that an individual intends to commit theft when he breaks into a closed business establishment after hours. *See Oster v. State*, 992 N.E.2d 871, 876-77 (Ind. Ct. App. 2013), *trans. denied*. The Coast To Coast surveillance video established McMahan was inside the showroom after hours.

[22]   It is not our role on appeal to substitute our judgment for that of the fact-finder, or to reweigh the evidence, and we will not disturb its verdict if there is substantial evidence of probative value from which the jury might reasonably infer guilt. *See Sallee*, 51 N.E.3d at 133. Based on direct evidence placing McMahan inside the Coast To Coast building, as well as substantial circumstantial evidence, we are satisfied that the State produced sufficient evidence of probative value to support McMahan's burglary conviction.

## B. Indiana Rules of Evidence 404(b)

[23]    Next, McMahan contends that the trial court committed fundamental error by admitting evidence regarding a prior burglary conviction pursuant to Indiana Rule of Evidence 404(b). The Rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Rule 404(b) (emphasis added). This rule exists to avoid the risk of a jury drawing the forbidden inference that the defendant's character is such that he has a propensity to engage in conduct of the sort charged, and that he acted in conformity with that character on the occasion at issue in the charge. *Garland v. State*, 788 N.E.2d 425, 429 (Ind. 2003). In considering the admissibility of such evidence, the trial court must "determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the person's propensity to engage in a wrongful act," and "balance the probative value of the evidence against its prejudicial effect," pursuant to Indiana Rule of Evidence 403. *Bassert v. State*, 795 N.E.2d 1050, 1053 (Ind. 2003).

[24]    Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Whatley v. State*, 908 N.E.2d 276, 280 (Ind. Ct. App. 2009), *trans. denied.* Failure to object to the admission of evidence at trial normally

results in waiver and precludes appellate review unless its admission constitutes fundamental error. *Id.* Acknowledging that he did not preserve the alleged errors below, McMahan now asserts fundamental error to avoid waiver.

[25] The fundamental error doctrine is extremely narrow. *Howard v. State*, 816 N.E.2d 948, 955 (Ind. Ct. App. 2004). To qualify as fundamental error, the error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* To be fundamental error, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Id.*

[26] Following his arrest and questioning, McMahan told the police that a third party, James, had committed the burglary. Based on McMahan's assertion, on March 9, 2017, prior to McMahan's jury trial, the State filed its Notice of Intent to use Evidence 404(b) evidence as follows

> The State intends to introduce evidence that on December 10, 2012, [McMahan] burglarized Dellen Automotive Group in Greenfield, Indiana to commit [a]uto [t]heft. [McMahan] did so by throwing a rock through the side window of Dellen Automotive Group. [McMahan] then entered Dellen Automotive Group rummaged through the Dellen Automotive Group offices until stealing keys for automobiles on the Dellen Automotive Group lot. [McMahan], along with a female accomplice, then stole a Chevrolet Camaro and a Chevrolet Cruze. [McMahan] admitted to these crimes to Indianapolis Metropolitan Police Detective John Walls, and pleaded guilty to them on or about September 24, 2013. [McMahan] was convicted and sentenced on October 23, 2013.

(Appellant's Amended App. Vol. II, p. 49).

[27] At his trial, McMahan maintained that it was James who broke into the Coast To Coast building. Based on its Notice of Intent to use Evidence 404(b) evidence, during cross-examination, the State elicited the following from McMahan without objection:

> Q. And you were the person convicted of burglary in Cause No. 30DOl-1212-FC-l906?
>
> A. Allegedly, yes.
>
> Q. Well, you were convicted in it, weren't you?
>
> A. Allegedly. I was charged for it, yeah.
>
> Q. And you pled guilty to it; right?
>
> A. Yeah, I took a plea, yeah.
>
> Q. And that was for a burglary at Dellen [Automotive Group]; right?
>
> A. I don't recall. That was when I was 18. I don't really remember.
>
> Q. And that Dellen [Automotive Group] that you pled guilty to burglarizing was for throwing . . . a rock through a window and stealing a car; is that correct?
>
> A. Correct.

(Tr. Vol. III, p. 76).

[28] On appeal, the State argues that the purpose of presenting McMahan's prior burglary conviction to the jury, was to prove identity. "The identity exception to the general prohibition on propensity evidence is crafted primarily for 'signature' crimes with a common *modus operandi*." *Thompson v. State*, 690 N.E.2d 224, 234 (Ind. 1997). The rationale behind this exception "is that the crimes, or means used to commit them, were so similar and unique that it is highly probable that the same person committed all of them." *Id.* (citing *Lockhart v. State*, 609 N.E.2d 1093, 1097 (Ind. 1993)). The test applied for determining whether evidence may be admitted under the identity exception as a "signature crime" is:

> [T]he State may prove identity by showing that the similarities between the prior offense and the crime charged are so strong and the method so clearly unique that it is highly probable that the perpetrator of both is the same person. However, the repeated commission of similar crimes is not enough to qualify for the exception to the general rule. The acts or methods employed must be so similar, unusual, and distinctive as to earmark them as the acts of the accused.

*Lockhart*, 609 N.E.2d at 1097. The inquiry has also been stated as: "[A]re these crimes so strikingly similar that one can say with reasonable certainty that one and the same person committed them?" *Davis v. State*, 598 N.E.2d 1041, 1048 n. 2 (Ind. 1992), *reh'g denied, cert, denied*, 510 U.S. 948, 114 S.Ct. 392 (1993).

[29] Here, a comparison of the burglary committed at Coast To Coast, and Dellen Automotive Group, reveals many similarities. In both situations, a rock was used to break a window in order to gain entry. Both showrooms were rummaged through, and keys were obtained. In the Dellen Automotive Group

burglary, McMahan successfully drove away with a vehicle. In the present case, an attempted auto theft at the Coast To Coast was halted when the police arrived. Following a police chase, Crittenden and McMahan were ordered out of the vehicle that they used for fleeing, and during a safety sweep, a key to a Mercedes Benz belonging to Coast To Coast was located on the bed of the truck. Given the striking similarities between the burglary at Dellen Automotive Group in 2013, and the burglary at Coast To Coast in 2016, we cannot say that the trial court abused its discretion in determining that whatever prejudice might arise was outweighed by the probative value of the evidence. *See Lockhart*, 609 N.E.2d at 1097. Consequently, we conclude that McMahan has failed to demonstrate the admission of his prior burglary conviction constituted fundamental error. *See Anderson v. State*, 15 N.E.3d 147, 149 (Ind. Ct. App. 2014).

### C. Jury Instruction

[30] McMahan also argues that the trial court erred in instructing the jury. The trial court instructed the jury regarding the scope and character of its consideration of evidence regarding McMahan's prior burglary conviction as follows:

> Evidence has been introduced that the accused was involved in crime other than those charged in the information. This evidence has been received solely on the issue of the accused's identity, preparation and plan. This evidence should be considered by you only for that limited purpose.

(Tr. Vol. III, p. 168).

[31]     McMahan did not object to this instruction.  A defendant who fails to object to a jury instruction at trial waives any challenge to that instruction on appeal, unless giving the instruction was fundamental error.  *Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000).  To avoid waiver, McMahan argues that the presumed instructional errors constitute fundamental error.  However, fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant, thereby depriving the defendant of fundamental due process.  *Ritchie v. State*, 809 N.E.2d 258, 273 (Ind. 2004) (citation omitted).  As the evidence of McMahan's prior burglary was properly admitted pursuant to Evidence Rule 404(b) to prove identity, McMahan fails to show error, let alone fundamental error

### D.  Inappropriate Sentence

[32]     Lastly, McMahan claims that his six-year aggregate sentence is inappropriate in light of the nature of the offense and his character.  Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender.  *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007).  The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character.  *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).  An appellant bears the burden of showing that both prongs of

the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.*

[33] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). A Level 5 felony is punishable for a fixed term between one and six years, with the advisory sentence being three years. I.C. § 35-50-2-6(b). The trial court sentenced McMahan to the maximum sentence of six years for the Level 5 felony burglary offense. Further, a Level 6 felony is punishable for a fixed term between six months and two and one-half years, with the advisory sentence being one year. I.C. § 35-50-2-7(b). The trial court sentenced McMahan to the maximum sentence of two and one-half years for the Level 6 felony resisting law enforcement. Lastly, a person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one year. I.C. § 35-50-3-2. Here, the trial court sentenced McMahan to the maximum sentence of one-year for the Class A misdemeanor criminal mischief. McMahan's sentences are to be served concurrently, for an aggregate sentence of six years.

[34] We first examine the nature of McMahan's offenses. McMahan broke the window of the Coast To Coast building after hours. Accompanied by

Crittenden, McMahan entered the showroom, but when the alarm sounded, both exited and drove down the street waiting approximately thirty minutes to see if authorities would respond to the break-in. McMahan and Crittenden thereafter returned to the scene; this time, Crittenden waited in the car. After Officer Hancock arrived and encountered McMahan inside the Coast To Coast building, he repeatedly identified himself as police and ordered McMahan to stop. Instead, McMahan ran out of the building and entered a Dodge pickup truck which then fled the scene. McMahan and Crittenden led the police on a high-speed chase that required the use of stop sticks to stop their fleeing truck. During a safety sweep, a key to a Mercedes Benz owned by Coast To Coast was found on the bed of the Dodge pickup truck. We do not find that the nature of the offenses aids McMahan's sentencing argument.

[35] The character of the offender is found in what we learn of the offender's life and conduct. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Included in the assessment of a defendant's character is a review of his criminal history. *Garcia v. State*, 47 N.E.3d, 1249, 1251 (Ind. Ct. App. 2015). Also, a record of arrests is relevant to a trial court's assessment of the defendant's character. *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005).

[36] As for McMahan's character, we acknowledge that he was only twenty-three-years-old at the time of his offense. Between 2007 and 2012, McMahan had several contacts with the juvenile justice system for carrying a handgun without a license, criminal mischief, criminal trespass, burglary, receiving stolen property, theft (multiple), and possession of marijuana. As an adult, McMahan

has been convicted of resisting law enforcement, theft, criminal conversion, and refusal to identify. McMahan has violated his prior probation multiple times. Following his conviction in the instant case, McMahan committed additional crimes. Specifically, in September 2017, McMahan was arrested in Marion County for Level 6 felony resisting law enforcement and Level 6 felony auto theft. As the trial court pointed out, McMahan has been offered numerous opportunities to reform, including probation and lenient sentences, but has repeatedly resumed his criminal activity. Also, we find that McMahan's substance abuse reflects poorly on his character. McMahan reported that he began using marijuana at age fifteen, and he used "marijuana daily," and then he progressed "to every other day until early 2011." (Appellant's Conf. App. Vol. III, p. 15). McMahan indicated that he began using alcohol when he was twenty-years old. While incarcerated for one of his many offenses, the DOC offered substance abuse treatment, but McMahan "declined to participate." (Appellant's Conf. App. Vol. III, p. 15).

[37] Based on the above, we cannot say that McMahan is entitled to a lesser sentence. Given the nature of the offenses and McMahan's criminal history, we cannot say that his sentence is inappropriate in light of the nature of the offenses and his character.

## CONCLUSION

[38] For the foregoing reasons, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support McMahan's burglary conviction; the trial court did not commit fundamental error by admitting

evidence of McMahan's prior burglary conviction; the trial court did not commit error by instructing the jury; and McMahan's sentence is not inappropriate in light of the nature of the nature of the offenses and his character.

[39] Affirmed.

[40] Vaidik, C. J. and Kirsch, J. concur